UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT FERRARA, | : CIVIL ACTION NO.<br>: 3:21-CV-01362 (JCH) |
| Plaintiff, | : |
| v. | : |
| UNITED FINANCIAL BANCORP. INC. N/K/A PEOPLE'S UNITED BANK, N.A. | : |
| Defendant. | : December 13, 2021 |

## AMENDED COMPLAINT

**JURISDICTION AND VENUE**

1. This is an action for damages, declaratory and injunctive relief, and attorneys' fees brought pursuant to the Americans with Disabilities Act (ADA), 42 USC §12101 et seq., and the Connecticut Fair Employment Practices Act (CFEPA), C.G.S. § 46a-60(a) et seq. This action seeks declaratory, monetary, compensatory, liquidated and punitive damages, equitable relief, and attorneys' fees, and all other damages available under state or federal law.

2. Jurisdiction of this action is invoked pursuant to 28 U.S.C. §§1331, 1343, and 42 U.S.C. §2000e-5(f)(3). This court has supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. §1367, in that the common law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 and 42 U.S.C. §2000e(f)(3), because this is the district in which the discriminatory conduct occurred.

**PARTIES**

4. The plaintiff, Robert Ferrara, is a citizen of the United States, actually residing in Colchester, Connecticut.

5. At all times relevant to this Complaint, he was an employee of the defendant, as that term is defined by the Americans with Disabilities Act, 42 USC §12101 et seq., and the Connecticut Fair Employment Practices Act (CFEPA), C.G.S. §46a-51(9).

6. At all relevant times the plaintiff has been a person with a disability as that term is defined by the Americans with Disabilities Act, as amended, and the Connecticut Fair Employment Practices Act. In the alternative, the plaintiff has a record of a disability and/or is perceived as having a disability. Specifically, in 2014, he was diagnosed with leukemia. This impairment substantially limited major life functions including, but not limited to, the major bodily function of normal cell growth. This is also a chronic condition within the meaning of CFEPA. In addition, the plaintiff suffered a splenectomy in 2006.

7. The plaintiff is a qualified individual with a disability, capable of performing all of the essential duties of his position either with no accommodation or with a reasonable accommodation.

8. The defendant is People's United Bank, N.A. as successor by merger with

United Financial Bancorp, Inc. ("United Bank"), which has a corporate headquarters at 850 Main Street Bridgeport, CT 06604 and a branch location and place of business at 225 Asylum Street, Hartford, CT 06103.  The defendant is engaged in a business affecting commerce and employs more than 500 employees.  At all times relevant to this complaint, the defendant has been an employer within the meaning of the Americans with Disabilities Act, as Amended, and the Connecticut Fair Employment Practices Act (CFEPA) C.G.S. §46a-51(10).

9. On or about January 8, 2020, the plaintiff filed administrative charges of discrimination on the basis of his disability with the Connecticut Commission of Human Rights and Opportunities and with the Equal Employment Opportunities Commission.

10. On or about August 25, 2021, the plaintiff received a release of jurisdiction from the Connecticut Commission of Human Rights and Opportunities.  On or about September 9, 2021, the plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

11. The plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

**FACTS**

12. The plaintiff was hired by United Bank in August 2011 as an Information Systems Technician.  On or about July 27, 2015, the plaintiff was promoted to the position of IT Support Manager.  On or about December 2018, the plaintiff became an IT Infrastructure Administrator which was considered a lateral move.

13. The plaintiff was qualified for the position of IT Infrastructure Administrator.

14. Prior to July 9, 2019, the plaintiff was never disciplined.

15. In 2014 the plaintiff was diagnosed with Chronic Myelogenous Leukemia. He immediately began chemotherapy.

16. In addition to chemotherapy, the plaintiff's condition requires frequent blood tests, bone marrow and BCR-ABL1 analysis to monitor treatment response and transmission levels. One of these tests is the Major Molecular Response (MMR) test which looks at the number of leukemia cells in the blood, and helps to monitor the disease. The goal is to achieve complete cytogenetic response.

17. The plaintiff immediately notified the defendant of his diagnosis. He also met with Sarah Kallajian, the defendant's HR Benefits Administrator.

18. The plaintiff went out on intermittent leave under the FMLA to treat his leukemia.

19. Between 2014 and 2019, the plaintiff had approximately six different managers. Each time he got a new manager, the plaintiff disclosed his disability.

20. On or about July 2018, Katherine Mahoney, the Vice President of Infrastructure, became the plaintiff's immediate supervisor.

21. The plaintiff disclosed his diagnosis to Mahoney.

22. For many years, the plaintiff's condition was well controlled with treatment, and his tests results showed complete cytogenetic response. However, in February 2019, his MMR test results showed that he was back into partial cytogenetic

response. Due to this and due to the fact that he was immunocompromised, the plaintiff would occasionally work remotely.

23. The plaintiff disclosed the change in his disease status to Ms. Mahoney. She seemed frustrated and became more dismissive of the plaintiff's work.

24. In addition, the plaintiff placed his doctor's appointments in Ms. Mahoney's "Katlendar" as was the normal practice. However, the plaintiff's co-workers began to make hostile comments about the plaintiff's disability and need for accommodations, including his need for occasional time off for medical appointments. For example, the plaintiff's coworkers would introduce themselves as though the plaintiff was new to the department, referred to him as "Mr. Sickboy", "Dr. Summeroff" or "Dr. Winteroff", and made derogatory remarks pertaining to the plaintiff's needs for time-off. Ms. Mahoney initially took no action to stop the discriminatory comments or hostile treatment.

25. The plaintiff complained to Ms. Mahoney about these discriminatory comments. However, the behavior among the team continued until Ms. Mahoney sent a department memo in either May or June 2019.

26. On or about June 2019, the plaintiff sought additional accommodations for his disability, including asking for FMLA leave. This was approved to begin on July 1, 2019. Ms. Mahoney was aware of these requests.

27. After work on July 9, the plaintiff started to become ill. However, he received an e-mail after business hours asking him to complete the monthly asset reconciliation process, even though he was not the only employee who had not completed his part of the process.

28. The plaintiff completed his part of the process. This involved him copying templates created by David Kenning dated August 2018 to asset reconciliation folders created each month. He then downloaded raw data from Bank's Asset Management System (the LANDesk Management System or LDMS), and downloaded the raw data from ACT Group's FM Audit into the Exports files for cleanup. The plaintiff would then copy the contents from LDMS and FM Audit data export files into 2018 templates and save with the current month's date in that month's asset reconciliation folder.

29. Both LANDesk and the ACT's FM Audit contained stale and duplicate records that were supposed to be cleaned up every month. This clean up was not part of the plaintiff's responsibilities. Because of the stale and duplicate records there were always discrepancies in locations, active/inactive status, and asset ids. This was a known issue.

30. In addition, the files created by the plaintiff were supposed to be reconciled through an Excel formula. However, that formula had stopped working in 2018. The plaintiff had reported that at the time, but nothing was done in response.

31. After getting Ms. Mahoney's request, the plaintiff followed the process as he had been doing for many months. He then reported the numbers that resulted from the exports. The file he submitted included the current and uploaded data.

32. The plaintiff did not falsify any reports or data.

33. Ms. Mahoney e-mailed the plaintiff asking where he had obtained the data.

34. Although he was feeling very ill, the plaintiff wanted to help Ms. Mahoney understand the report. He therefore went into the report and removed some of the old

data and archived it so that Ms. Mahoney could look in the exports file and see the raw ACT and LANDesk files that she had been asking about. Exhausted and ill, he then went to bed.

35. The plaintiff did not falsify any reports and data.

36. The plaintiff was out sick July 10 and July 11, 2019 because of his disability.

37. On or about July 10, 2019, Ms. Mahoney spoke to Dave Kenning who allegedly shared his speculation that the plaintiff may have been changing the dates on the files every month without actually downloading the data.

38. A reasonably informed investigation would have quickly shown Kenning's suspicions to be false. Ms. Mahoney did not engage in such an investigation.

39. On or before July 12, 2019, before even speaking to the plaintiff, Ms. Mahoney created a written warning for the alleged data reporting issues.

40. On July 12, 2019, Ms. Mahoney gave the plaintiff the written warning she had prepared, and then terminated his employment.

41. Ms. Mahoney claimed that the data provided by the plaintiff on July 9, 2019 was from August 29, 2018. This claim, however, was not true, and a reasonable investigation would have established that. Ms. Mahoney did not engage in such an investigation before terminating the plaintiff.

42. In addition, at no time prior to terminating the plaintiff did Ms. Mahoney ask the plaintiff about the August 2018 date, about how the reconciliation process worked or inquire as to why he had archived old data after receiving her e-mail to make it easier for her to view the current data.

43. When the plaintiff was told that he was being terminated he tried to explain the process, stating that the data was not real time, that there were always discrepancies, that she had been looking at the wrong directories and did not understand the process.

44. During the administrative proceedings at the CHRO the defendant claimed that Ms. Mahoney was not aware that the plaintiff had leukemia.

45. This was not true.

46. During the administrative proceedings at the CHRO, the defendant was asked to produce the report prepared by the plaintiff and the audit allegedly conducted by Ms. Mahoney. The defendant was unable to produce these reports. On information and belief, the defendant has destroyed these critical documents.

47. On information and belief, the defendant has never disciplined an employee for inventory inaccuracies or an inaccurate report.

48. The plaintiff was shocked and upset about his termination. He was also concerned about his ability to continue receiving medical care, particularly given his disabilities.

49. After his termination, the plaintiff's duties were reassigned to employees who did not have the disabilities that he had, the record of disabilities that he had and/or who were not perceived as disabled.

50. On information and belief, the defendant has discriminated against and terminated the plaintiff because of his disability.

**COUNT ONE (ADA)**

1. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-50 above.

51. The plaintiff is an individual with a disability within the meaning of the ADA.

52. The plaintiff was discriminated against and terminated because of his disability.

53. The defendant's stated reason for terminating the plaintiff's employment is pretextual. The defendant's decision was motivated by unlawful animus toward the plaintiff because of his disability, perceived disability or record of disability.

54. By this conduct, the defendant has discriminated against the plaintiff in violation of the rights secured to him by the ADA.

55. The defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the plaintiff's rights.

56. As a result of the defendant's illegal conduct, the plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment and has suffered mental and emotional distress, anxiety, pain and suffering, humiliation and mental anguish and other personal injuries.

**COUNT TWO (CFEPA) (Disability Discrimination)**

1. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-56 above.

57. The plaintiff is an individual with a disability within the meaning of the CFEPA.

58. The plaintiff's disability was a motivating factor in the defendant's decision to terminate his employment.

59. The defendant's stated reason for terminating the plaintiff's employment is pretextual. The defendant's decision was motivated by unlawful animus toward the plaintiff because of his disability, perceived disability or record of disability.

60. By this conduct, the defendant has discriminated against the plaintiff in violation of the rights secured to him by CFEPA, C.G.S. §46a-60a1 and §46a-100 et seq.

61. The defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the plaintiff's rights.

62. As a result of the defendant's illegal conduct, the plaintiff has suffered damages in the form of lost wages, benefits and other attendant rights, privileges and conditions of employment and has suffered mental and emotional distress, anxiety, pain and suffering, humiliation and mental anguish and other personal injuries.

## **DEMAND FOR RELIEF**

**WHEREFORE**, the plaintiff respectfully requests this Court grant him the following relief:

1. Order the defendant to cease and desist from the discriminatory acts against him;

2. Order the defendant to reinstate the plaintiff to the position that he would have been in absent the defendant's discriminatory treatment;

3. Order the defendant to make the plaintiff whole for all lost wages and benefits;

4. Award the plaintiff compensatory and punitive damages, including damages for pain and suffering;

5. Award the plaintiff reasonable attorneys' fees, interest and costs;

6. Award the plaintiff any other legal or equitable relief that the Court deems appropriate.

**REQUEST FOR TRIAL BY JURY**

The plaintiff requests a trial by jury as to all claims to which he is entitled.

THE PLAINTIFF,

By:   /s/ *Gregg D. Adler*
Gregg D. Adler ct05698
Livingston, Adler, Pulda, Meiklejohn
  & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
Tel: (860) 233-9821
Fax: (860) 232-7818
gdadler@lapmk.org

**CERTIFICATION**

This is to certify that on December 13, 2021, a copy of the foregoing Amended Complaint was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

/s/ *Gregg D. Adler*
Gregg D. Adler